NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted March 10, 2011[*]
Decided March 11, 2011

**Before**

DANIEL A. MANION, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 10-2142

| | |
|---|---|
| DONNELL JAMISON,<br> *Plaintiff-Appellant*, | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| *v.* | No. 09 CV 06911 |
| OFFICER URBAN, Chicago Police Dept.,<br>Badge #16746, et al.,<br> *Defendants-Appellees*. | Robert M. Dow, Jr.,<br>*Judge*. |

**O R D E R**

Donnell Jamison, an Illinois prisoner, sued several Chicago police officers, Illinois state attorneys, and the city of Chicago for civil rights violations surrounding his arrest. The district court dismissed his complaint at screening for failure to state a claim, *see* 28 U.S.C. §§ 1915(e)(2)(B), 1915A(a), concluding that Jamison's federal claims were time-barred or not actionable. Jamison appeals; we affirm.

---

[*] The defendants were not served in the district court and are not participating in this appeal. Thus, the appeal is submitted on the appellant's brief and the record. *See* Fed. R. App. P. 34(a)(2)(C).

We accept the facts alleged in Jamison's complaint as true. *See Santiago v. Walls*, 599 F.3d 749, 756 (7th Cir. 2010). Jamison, who is African-American, says he was complying with all traffic laws when Chicago police officers stopped his car in November 2006. Displaying their weapons, the officers ordered Jamison and his passenger—identified as "Jordan"—out of the car; the officers then searched the car and the two men. Although the searches turned up nothing, the officers took Jamison and Jordan to the police station, where, Jamison alleged, the officers "went fishing for evidence of some crime to justify the illegal vehicle stop." As Jamison was being questioned, officers searched the car again and found locked computer cases in the trunk. After coercing Jamison to give them the keys, the officers opened the cases and seized the property within. (Jamison does not specify what was in the cases, but his complaint does say that the defendants impounded his laptop computers, four digital cameras, a card printer and memory sticks.) Jamison was charged with offenses related to the improper manufacture of driver's licenses and identification cards, and posted bail the next day. When he was arrested again in March 2007 for a traffic violation, the state arbitrarily revoked his bail without a hearing; he was jailed for several months. In December 2007 a state trial court quashed Jamison's November 2006 arrest and suppressed the seized evidence after concluding that the police lacked probable cause to stop his car.

Jamison filed this lawsuit in November 2009. Citing 42 U.S.C. §§ 1981 and 1983, he claimed that the stop and arrest in 2006 were racially motivated; that the police falsely arrested him, used excessive force against him, and unreasonably searched and seized him and his property; that he was unconstitutionally confined after being denied bail without due process; and that Chicago had an "unconstitutional custom or policy" of deliberate indifference to the constitutional rights of African-American men in predominantly white neighborhoods and in high-crime areas. Jamison also asserted a claim of malicious prosecution under § 1983, and conspiracy-related claims of racial animus under § 1985(3) and § 1986. In addition, Jamison brought state law claims for false imprisonment, malicious prosecution, and intentional infliction of emotional distress.

Applying Illinois' two-year personal-injury statute of limitations, *see* 735 ILCS 5/13-202, the district court observed that almost all of Jamison's federal civil rights claims appeared to be time-barred—having accrued more than two years before he filed suit—and that a stand-alone claim of malicious prosecution was not actionable under § 1983. The court ordered Jamison to show cause why his suit should not be dismissed. Jamison responded that his claims based on false arrest, illegal searches and seizure, and excessive force did not accrue until the charges against him were dropped in December 2007; until then, he contended, *Heck v. Humphrey*, 512 U.S. 477 (1994), had barred his claims. The court disagreed and dismissed the complaint on grounds that Jamison's federal claims—with the exception of the malicious prosecution claim, which was not actionable—were time-barred,

and that supplemental jurisdiction did not extend over his state law claims. The court denied Jamison's post-judgment motion for relief as duplicative of his earlier filings.

On appeal, Jamison makes two arguments that his federal claims were timely. He first argues that the discovery rule tolled the accrual of his claims until November 2009, when he says he realized that he had been injured under the civil rights statutes. Under the discovery rule, a claim accrues—and the statute of limitations begins to run—when a plaintiff discovers that he has been injured, and by whom. *See United States v. Norwood*, 602 F.3d 830, 837 (7th Cir. 2010); *Brademas v. Ind. Hous. Fin. Auth.*, 354 F.3d 681, 686 (7th Cir. 2004). But the date of discovery is when a reasonably diligent person should have discovered the injury, not necessarily when the plaintiff himself actually discovers it. *See Merck & Co., Inc. v. Reynolds*, 130 S. Ct. 1784, 1794 (2010); *Barry Aviation Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 688 (7th Cir. 2004).

Jamison not only waived his discovery-rule argument by failing to raise it in the district court, *see Tully v. Barada*, 599 F.3d 591, 594 (7th Cir. 2010), but demonstrated by his actions after the arrest in 2006 that he reasonably could have discovered his injury long before November 2009. As stated in his complaint, he expressed objections to his treatment as early as December 2006, when he asked the Chicago Police Department to investigate the "racially motivated illegal stop." And as the district court noted, he petitioned for habeas corpus in April 2007 to challenge his detention without a bail hearing. His claims would have accrued by those dates, making them untimely here. Jamison's argument that he had "no knowledge of civil rights constitutional law" before late 2009 is thus unavailing; his claims accrued when he discovered, or should have discovered, his injuries—not when he learned that his injuries were unlawful. *See Thelen v. Marc's Big Boy Corp.*, 64 F.3d 264, 267 (7th Cir. 1995).

Next, Jamison renews his argument that, under *Heck*, his claims did not accrue until December 2007, when the charges against him were dismissed. *Heck* requires that a district court dismiss a state prisoner's civil rights suit if judgment in favor of the prisoner would imply the invalidity of his conviction or sentence. 512 U.S. at 486-87. Jamison contends that *Heck* applies not only to convicted prisoners, but also to defendants like himself who faced pending charges and potential convictions. Not until the criminal case against him was closed, he argues, could he have filed this suit; only then did his claims accrue. But Jamison is wrong. *Heck* delays accrual only when there exists a conviction or sentence that has not been invalidated; it does not bar suits that would call into question anticipated convictions. *See Wallace v. Kato*, 549 U.S. 384, 393-94 (2007); *Evans v. Poskon*, 603 F.3d 362, 363 (7th Cir. 2010). Because Jamison was never convicted, *Heck* did not bar his suit.

Accordingly, we AFFIRM the judgment of the district court.